UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

MELISSA K.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

3:19-cv-1390-JR

OPINION AND ORDER

Russo, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's applications for disability insurance and supplemental security income benefits. Plaintiff asserts disability beginning October 3, 2012, due to anxiety; depression; post-traumatic stress disorder (PTSD); back and neck pain; joint pain in hands, hips, knees and feet; headaches; and insomnia. Tr. 189, 224. After a hearing held on February 10, 2016, an Administrative Law Judge (ALJ) determined plaintiff was not disabled. Tr. 40-65, 20-36. Plaintiff appealed the decision to the United States District Court. On August 8, 2018, pursuant to the

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

stipulation of the parties, the Court remanded the case for new hearing to reevaluate the opinion of plaintiff's treating therapist, Talia Jackson, among other things. Tr. 685-86

After a second hearing held May 23, 2019, the ALJ again determined plaintiff was not disabled. Tr. 623-51, 597-615. Plaintiff contends the ALJ erred by: (1) rejecting plaintiff's subjective statements regarding the severity of her symptoms and limitations; (2) rejecting the opinion of Talia Jackson; and (3) rejecting the opinion of examining psychiatrist Scott Alvord.

A.     Subjective Statements

On October 1, 2012, plaintiff's boyfriend beat and strangled her into unconsciousness. Tr. 298-99. Plaintiff testified that she has PTSD and has panic attacks. Tr. 48. At her February 2016 hearing, plaintiff testified her panic attacks last about 10-20 minutes. Tr. 50. Plaintiff also testified she suffers from depression and has good and bad days with her bad days resulting in her inability to leave her room. Tr. 51. She stated she has more bad days then good, but that she has hope for the future. Tr. 52. She also stated there was a possibility she could do a simple full-time job such as packing shoes in boxes with no public interaction and limited interaction with a supervisor. Tr. 54-55.

At her May 2019 hearing, plaintiff testified her mental health was worse. TR. 627. She stated she has an "inability to even approach an interview or not letting an employer down because I'm not there for very long." Tr. 627. She also stated has a very poor short-term memory as well as "speech problems". Tr. 628. She testified she has two good days a month. Tr. 630.

The ALJ found plaintiff was limited to simple repetitive tasks and decisions, as well as to "superficial" interactions with coworkers and no interaction with the public. Tr. 604. However, he found plaintiff's testimony inconsistent with the record. Tr. 605. The ALJ noted numerous instances in the medical record demonstrating unremarkable mental status exams. Tr. 605-06; See,

e.g., Tr. 359, 569, 571, 573, 576, 579, 583, 585, 587). The ALJ also noted a consultative examination conducted by Dr. Luke Patrick, Ph.D., who noted only mild impairment in understanding and remembering instructions, moderate impairment to attention and concentration, and marked impairment with social interaction. Tr. 606, 431.

The ALJ also cited record support for improved anxiety symptoms with treatment. Tr. 607-08. For instance, the record shows in November 2012, plaintiff reported noticeable improvement in her well-being and mood with "amazing," "life changing" therapy. Tr. 332.

Plaintiff discontinued her medications for a period in April to September 2014 and reported a resurgence in panic attacks and PTSD. Tr. 587, 585. However, upon resuming her medications in October 2014, plaintiff reported an ability to "self-sooth" and had a normal mental status exam. Tr. 583.

In March 2017, plaintiff reported a "good mood," that she was attending therapy group, the increase in Zoloft "helped," and she had not experienced any "deep depression." Tr. 937. In April 2017, plaintiff again reported a "good mood" and that her medications were helping. Tr. 936. In June 2017, plaintiff similarly reported an excellent mood, good sleep, and that she was "well-managed on her meds." Tr. 933-34. Indeed, plaintiff stated her naltrexone medication was "the most amazing thing that has happened to her." Tr. 933.

In July 2017, plaintiff reported feeling "great and happy," that she continues to attend her therapy group, and is well-managed on her medications. Tr. 932. In October 2017, plaintiff again reported naltrexone was "a godsend." Plaintiff reported her mood as "good, even, and smooth" in December 2017. Tr. 927.

Although the record shows some backsliding due to her parents' illnesses and other stress, tr. 921, it also shows that plaintiff believes her medication is helping, that "everything is working the way it should." Tr. 903.

In December 2018, plaintiff again reports she is "doing good" and that her medication is working well despite some stressful situations. Tr. 1207. Although plaintiff also reported the stressful situation caused her to stop going out, she stated her therapy has been helpful and that she resumed EDMR in small increments. Tr. 1207-08.

Although the record supports significant issues with anxiety and depression, the record also shows substantial evidence supporting the ALJ's interpretation of improvement with treatment that contradicts plaintiff's statements of "only two good days per month." Improvement with treatment provides a clear and convincing reason for rejecting plaintiff's testimony. See, e.g., Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). Accordingly, the ALJ did not err with respect to plaintiff's testimony.

B.     Treating Therapist's Opinion

Plaintiff began weekly sessions with mental health therapist Talia Jackson on October 2, 2014. Tr. 589. On February 3, 2016, Jackson opined plaintiff has moderate limitations in concentration, persistence or pace; marked limitations in social functioning; marked limitations in activities of daily living; marked limitations in her ability to work with others; and marked limitations in her ability to complete a normal workday. Tr. 591-92. Jackson stated that due to plaintiff's frequent panic attacks, she would need to take breaks at her discretion and would miss two or more workdays per month. Tr. 593. On May 14, 2019, Jackson stated that plaintiff had not improved. Tr. 1240.

The ALJ rejected Jackson's opinion stating it was inconsistent with the medical record and that other physicians generally noted unremarkable mental status exams. The ALJ also noted Jackson failed to consistently perform mental status exams, relied heavily on plaintiff's subjective reports, failed to cite objective findings, and actually noted improvement with treatment. Tr. 611-12.

The ALJ may discount testimony from other medical sources by giving reasons germane to each witness. See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010). As noted above, the treatment record showed improvement in plaintiff's condition with therapy and medication which contradicts plaintiff's statements of a drastic inability to function. If a treating provider's opinions are based to a large extent on plaintiff's self-reports and not on clinical evidence, and the ALJ finds the plaintiff not credible, the ALJ may discount the treating provider's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.2008). The ALJ did not err in rejecting Jackson's opinion.

C.     Dr. Scott Alvord

Scott Alvord, PsyD, conducted a consultative exam of plaintiff on May 13, 2019. Dr. Alvord reviewed a number of psychological exams, conducted a mental status exam, and interviewed plaintiff. Tr. 1242. However, Dr. Alvord specifically noted, plaintiff "has undergone a neuropsychological evaluation, but test results were not provided. This is questionable and it is unclear if there was some concern regarding validity issues/malingering." Tr. 1245.

Following the interview, Dr. Alvord opined plaintiff would have difficulty: (1) performing simple and repetitive tasks; (2) performing detailed and complex tasks; (3) accepting instructions; (4) interacting with co-workers and the public; (5) performing work activities on a consistent basis without special accommodations; (6) maintaining regular attendance at work; (7) completing a

normal workday without interruptions; and (8) dealing with the usual stress of the workplace. Tr. 1246.

The ALJ discounted this opinion noting Dr. Alvord only provided an assessment of difficulty in various areas of functioning without noting specific limitations and based his assessment on plaintiff's subjective complaints. Tr. 613. As noted above, the ALJ appropriately discounted plaintiff's subjective complaints and Dr. Alvord's opinion is largely based on plaintiff's complaints. Accordingly, the ALJ did not err in rejecting this opinion. See Tommasetti 533 F.3d at 1041.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed, and this action is dismissed.

DATED this 10th day of August, 2020.

       /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge